WOODSIDE ACRES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104702. Promulgated May 12, 1942.

*A. F. Schaeffner, Esq.*, for the petitioner.
*Allen T. Akin, Esq.*, and *Thomas R. Charshee, Esq.*, for the respondent.

## OPINION.

MURDOCK: The Commissioner has determined that the petitioner is a personal holding company. The petitioner, apparently conceding that it meets the definition in other respects, claims that it is not a personal holding company because more than 20 percent of its gross income was other than personal holding company income. Sec. 351 (b) (1) (A), Revenue Act of 1936, as amended by sec. 1, Revenue Act of 1937. Its personal holding company income amounted to $67,212.08 and the question is thus narrowed to whether the petitioner had more than one-fourth of that amount, or $16,803.03, of gross income from other sources. It had gross receipts from its farm and dairy of $24,663.09, from which it subtracted $2,056.78 as cost of operation and reported $22,606.31 as "gross profit where inventories are not an income-determining factor." The $2,056.78 subtracted as cost of operation apparently consisted of $1,790.13, the cost of milk

and cream purchased for resale, and $266.65 paid for seeds and plants. The petitioner now concedes that about $1,200 paid for pasteurizing should also be subtracted to determine gross income from the dairy business. The Commissioner contends that additional amounts must be subtracted from the gross receipts mentioned above in order to arrive at gross income from the dairy. The operation of the farm was collateral to the operation of the dairy and the gross income from the farm is so small that it need not be separately considered.

The Commissioner starts with the amount of $23,954.51 as gross receipts from the sale of milk, cream, and butter. He first subtracts the amount subtracted by the petitioner on the return, $2,056.78, and he also subtracts $5,860.92 paid for feed and $5,973.13, the amount paid for dairy labor after excluding the amount paid for clerical help and delivery men. He thus determines that the gross income from the farm was $10,063.68, an amount less than 20 percent of the petitioner's gross income for the taxable year.

The petitioner contends that those items should not be subtracted, except that part of the wages paid for pasteurizing. One of its arguments is that the amounts which the Commissioner would thus subtract in determining gross income from the dairy are deductible under section 23 (a) as ordinary and necessary expenses. The same might be said for the wages paid for pasteurizing and the cost of milk, seeds, and plants purchased. Congress, as a matter of grace, has allowed some specific deductions under section 23. If it has allowed a deduction for some item which is in fact a part of the cost of production, the allowance of the deduction would not change the character of the item and the amount should, nevertheless, be subtracted from gross receipts in determining gross income from the business operation. The petitioner cites no authority to the contrary.

The petitioner also contends that the method of computing gross income from the dairy business used by the Commissioner violates the provisions of article 22 (a) (7) of Regulations 94. That article defines a farm as including a dairy farm and it defines a farmer as including a corporation which owns and operates a farm for gain. The petitioner qualifies as a farmer under the definition. The article is entitled "Gross Income of Farmers." The first paragraph provides what shall be included in the gross income of "a farmer reporting on the basis of receipts and disbursements (in which no inventory to determine profits is used)." The second paragraph provides what shall be included in gross income "in the case of a farmer reporting on the accrual basis (in which an inventory is used to determine profits)." It might be argued that these two paragraphs were intended to be all-inclusive and to exclude the use of any other method in reporting income from a farm. But it should be noted in this

connection that the petitioner did not report its income in accordance with either paragraph. It used an accrual method of accounting, but it did not compute its gross income in accordance with the second paragraph of the article, which involves the use of an opening and closing inventory. The petitioner did not use inventories in computing its gross income from the dairy business or the farm. The Commissioner made no change in the income as reported by the petitioner and, thus, he did not make the computation in accordance with the second paragraph of this article. Perhaps the regulation does not exclude other methods of reporting farm income.

Neither in the first paragraph nor in the second paragraph of article 22 (a) (7) is there any indication that costs of production are to be subtracted from gross receipts in arriving at gross income of farmers. A similar provision has been in effect for many years for income tax purposes. The petitioner argues that the regulation has the force and effect of law. It also contends that gross income for personal holding company surtax purposes is the same as gross income for income tax purposes. Net income under section 21 for income tax purposes is the same amount regardless of whether certain costs are deducted as ordinary and necessary expenses or are subtracted from gross receipts in computing gross income. But the difference is vital for personal holding company surtax purposes.

Article 22 (a) (5), entitled "Gross Income From Business," provides that the cost of goods sold must be subtracted from total sales in arriving at gross income from a manufacturing, merchandising, or mining business. The Commissioner contends that similar subtractions must be made here. But the petitioner replies that since article 22 (a) (5) does not include a dairy business, gross income from that business must be computed in some other way, particularly the way prescribed in the second paragraph of article 22 (a) (7).

The personal holding company surtax appeared for the first time in the Revenue Act of 1934. Obviously, the provisions of article 22 (a) (7), which originated many years previously, were not written by anyone who had in mind the personal holding company surtax provisions or the problems which would arise under that new tax. Therefore, in arriving at the correct answer to the present controversy, the provisions of article 22 (a) (7) should not be followed blindly. It would seem just as reasonable to subtract the cost of production and the cost of goods sold in the dairy business to arrive at gross income as it would to make similar subtractions in any other business.

Products of this dairy business were sold. They consisted of milk, cream, and butter. The process was not entirely analogous to that of a manufacturing plant where raw materials are purchased and then changed by human hands or by machines into a salable

finished product.   The petitioner argues that its cows produced milk and cream without aid.   Writers on the subject recognize that there are certain direct costs of producing milk.   These include the cost of feed, the cost of labor, and various other expenses such as bedding, depreciation on buildings, equipment, and the cows themselves, bull service, and other items.   See Milk Production Cost Accounts, by Carl W. Larson, Columbia University Press 1916; Calculating the Cost of Milk Production, by E. G. Misner, published at Cornell University, February 1919 as lesson 142, Farm Management Series; Accounting, Theory and Practice, by Roy B. Kester, vol. 3, ch. 7; Ranch Cost Accounting, by Clem W. Collins.   Expenditures included in the cost of production of the milk certainly include the cost of feed for the cows and the wages of the men who took care of the animals and milked them.   The milk then had to be separated from the cream and had to be pasteurized.   The butter had to be churned.   The wages of the men who put the product through these processes are properly a part of the cost of production.   It is unnecessary to consider other items.   The amount left after subtracting these costs from the gross receipts is less than $16,000.   Therefore, more than 80 percent of the gross income of the petitioner for the year is personal holding company income as defined in section 351 (b) (1) (A).

The Commissioner did not err in taxing this petitioner as a personal holding company.   No independent contention is made in regard to the penalty and in this case it follows the tax, since no return was filed.

*Decision will be entered for the respondent.*