## WOODSIDE ACRES, Inc., v. COMMISSIONER OF INTERNAL REVENUE.
### No. 111.

Circuit Court of Appeals, Second Circuit.

April 14, 1943.

Aloysius F. Schaeffner, of New York City, for petitioner.

White & Case, of New York City (A. Chauncey Newlin, of New York City, of counsel), amicus curiae.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and N. Barr Miller, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The petitioner, Woodside Acres, Inc., is a corporation with assets consisting of securities and a dairy farm located at Syosset, N. Y. For the taxable year 1937 it filed its return on the accrual basis or at least it did so in that form but without keeping and using inventories.

Decision on this petition to review depends upon how the gross income of a dairy farm should be determined. Its amount is a material factor in deciding whether the owner and operator was bound to file a return and pay taxes as a personal holding company. The only issue now is whether it should have reported as a personal holding company. It did not do that and the Commissioner, deciding that it was a personal holding company within the meaning of § 352(a) (1) of the Revenue Act of 1936, as amended, 26 U.S.C.A. Int. Rev.Acts, page 938, determined a deficiency which was assessed, together with a penalty, against it. The Commissioner concededly was right if less than 20% of the petitioner's gross income in the taxable year was derived from farming since all the other elements requiring the petitioner to file as a personal holding company are present.

The facts so far as they are relevant are undisputed. For the calendar year 1937 the petitioner received as income $67,212.08 from dividends, interest and rents. It reported that and receipts from the operation of its farm to the amount of $24,663.09. From its gross receipts, concerning which there is no dispute, it deducted only two items to compute its gross income. They were $1,790.13 which was the cost of milk and cream purchased for resale and sold and $266.65 which was paid for seed and plants. Its gross income from its farm was thus computed to be $22,606.31 and so included in its return. If that was the correct way to compute its gross income from the dairy the amount was large enough to carry to success the petitioner's petition for review. More than 20% of its gross income then came from farming and it would not be within the statutory definition of a holding company.

The Commissioner, however, has taken the position that the cost of feed bought and used in the operation of the dairy farm to the amount of $5,860.92 and the cost of dairy labor which was over $5,000 should have been deducted from the gross receipts from the operation of the dairy farm to arrive accurately at the gross farm income. If either of these items should have been deducted from the amount received in computing petitioner's gross income for the purpose of determining whether it was a personal holding company, it follows as a matter of arithmetic that less than 20% of petitioner's income came from farming and that the Commissioner's action was correct.

We shall then deal merely with the first item for feed since if that is to be taken out the decision will have to be affirmed anyway. There can, of course, be no doubt that all the usual and necessary expenses of operating the dairy farm are deductible in computing net taxable income under § 23 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 827, and it is equally clear that the cost of feed for the cows and the cost of labor to care for them are both usual and necessary expenses of such a farm. Except when the special subject of holding company taxation is involved it may not make any difference to a taxpayer whether or not such expenses as these are subtracted from gross receipts and the result called gross income, from which whatever deductions the law allows are then taken to arrive at net taxable income. Yet whether or not something is correctly called gross income may be, as it is here, decisive as to the nature of a taxpayer's liability for surtaxes like those assessed against the petitioner. Then it is essential that things called alike shall be alike.

The petitioner bears heavily in support of its petition on the language of § 23 of the 1936 Act and that of Arts. 22(a)-7 and 23 (a)-11 of T. R. 94 interpreting it. The above statute provides that in computing net income there shall be allowed as deductions all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The regulations deal with the gross income and the expenses of farmers. Art. 22(a)-7 has to do with the computation of gross income both in the case of farmers reporting on the basis of receipts and disbursements where no inventory to determine profits is used and in the case of farmers reporting on the accrual basis in which an inventory is used to determine profits. Though this petitioner reported on the accrual basis, it did so without the use of an inventory and perhaps it would be difficult to put it clearly within one or the other ordinary methods reporting income. But that is presently of no moment. This regulation does, we shall now assume, direct farmers to include in gross income their gross receipts. Art. 23(a)-11 which deals expressly with the expenses of farmers provides that, "A farmer who operates a farm for profit is entitled to deduct from gross income as necessary expenses all amounts actually expended in carrying on the business of farming." And types of such expenses given leave no doubt that the actual cost of feeding cows on a dairy farm is to be classed among the necessary expenses within this regulation. Thus far it seems that the language of the statute and these regulations support the petitioner in its contention that as a farmer its gross income must be treated at least as so much of its gross receipts as would remain before subtracting the expenses it is allowed to deduct from what is called its gross income. It is certainly correct if it is permitted to deduct those expenses after its gross income has been computed for it cannot deduct them both in computing gross income and from gross income. And it argues that this regulation must be given the effect of law since it is an old one and Congress must have enacted § 351 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 757, the personal holding company taxing statute, with it in mind.

This conclusion is arrived at in a time-honored way. The taxing statute includes what is called Title I and Title IA, sections 1 et seq., and 351 et seq., 26 U.S.C.A. Int. Rev.Acts, pages 819 et seq., and 938 et seq. It provides (§ 357 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 942) that the terms used in Title IA shall have the same meaning they do in Title I. Art. 352-2 of T. R. 94, after amendment to apply to the 1937 Act, provided that in determining whether personal holding company income equalled the required percentage of total gross income the determination should not be upon the basis of gross receipts and reference was made to § 22(a) of the statute and the regulations thereunder for a "further discussion of what constituted 'gross income.'" The argument continues that Art. 22(a)-7 of Regulations 94 which deals with part of Title I is substantially the same

as was Art. 22(a)-7 of T. R. 86 under the 1934 Act; Art. 57 of T. R. under the 1932 Act; and so on back at least to 1921. The petitioner has summed up its position as follows: "Thus from 1921 to 1934, when the first act imposing a tax on personal holding companies was passed, the regulations contained provisions setting forth what shall be included in the gross income of a farmer, and when Congress by Section 351(b) (4) of the Revenue Act of 1934 provided that the terms used in said section shall have the same meaning as when used in Title 1, it clearly meant that the term 'gross income' as used in said section should mean gross income as defined in Section 22 and the Regulations promulgated thereunder." It follows this by pointing out that Congress passed the 1936 and 1937 Acts without making any change to show that it disapproved the regulations and similar regulations were promulgated under those statutes. From all of which it concludes that Congress has adopted the regulations on which the petitioner relies as the proper construction of the statute. Massachusetts Mut. Life Ins. Co. v. United States, 288 U. S. 269-272, 53 S.Ct. 337, 77 L.Ed. 739.

This argument is indeed plausible but there are good reasons why it misses the mark. The regulations are perfectly clear and reasonable interpretations of the statutes they were originally drawn to interpret. And they continued to have that same virtue in respect to the 1937 Act so far as they were applicable. It is only necessary to confine their application to the subject they were designed to cover i. e. the computation of the taxable income of farmers. They were originally promulgated when it did not make any difference taxwise whether a corporation which was a farmer as defined in the regulations might derive all its income from farming or part in that way and part from securities in whatever proportion. It did not matter whether some subtraction was made from gross receipts to get what was called gross income from which other allowable deductions were made to arrive at net taxable income or whether the order of deduction was different and the amount of what was called gross income consequently different so long as net taxable income was the same. But when the taxation of personal holding companies as such began and what were such companies was made in part to depend upon the nature of the source of a given percentage of their gross income, it became necessary, in order to determine who was liable for such surtaxes, to make precise computations of gross income. No less was required by the need for classification of the taxpayer as, or as not, a personal holding company with the nature of the source of its gross income one of the factors to be given effect. Then regulations which were plainly promulgated to make it easy for farmers to report their farm income for taxation and still served that purpose were surely left to provide the same assistance to taxpayers and tax collectors. But they were not necessarily also extended to a situation as to which they were inadequate. Congress did not expressly do that when it provided that the terms used in Title IA should mean what the same terms meant when used in Title I. Farmers might still compute their net taxable income as the regulations did, and had, provided. Yet gross income so determined for that purpose did not become an immutable factor in determining whether a corporation which ran a farm was also a personal holding company. Congress made no mention of any regulations. We are unwilling, therefore, to impute to it an intent to adopt apparently inapplicable regulations which define gross income for one purpose to provide the definition of gross income for the entirely new and different purpose of the personal holding company taxing statute. It follows then as a matter of course that this taxpayer was permitted to report as a part of its gross income in its return no more of its gross receipts than it could have so reported had it been engaged in some business other than farming. Gross receipts are not always gross income. Southern Pac. Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142. And the applicable regulation in this instance is Art. 22(a)-5 of T. R. 94. The amount reportable as the gross income of the taxpayer derived from its farm was, accordingly, not enough to make it erroneous for the Commissioner to assess it for taxation as a personal holding company and to impose the penalty for its failure to file a return as such. See, also, Snyder v. Commissioner, 295 U.S. 134, 55 S.Ct. 737, 79 L.Ed. 1351; Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200.

Affirmed.