OPINION. Black, Judge: The pleadings have raised several issues with regard to the sale pf a dairy farm and dairy cattle for the taxable years 1943 and 1947. Some of these issues are alternative issues depending upon whether the sale took place in 1943 or 1947. We shall first determine that question in order to dispose of the issues that are moot and to present the actual issues before us. On July 6, 1943, petitioners executed a deed and bill of sale to Barran and Winton to sell a farm, dairy herd, and other personal property and received two promissory notes in the amounts of $60,000 for the land and $48,558.46 for the personal property plus a $5,000 loan. There is no contention by petitioner that these notes were' not worth their face value. Petitioner was to be paid in installments, and a lease for 5 years was also executed for the farm, admittedly to facilitate foreclosure in the event Barran and Winton did not maintain their installment payments. All the documents were placed in escrow. The so called lease provided that Barran and Winton would receive credits on their two notes for all amounts paid as rent and if terminated earlier the lessees were to receive personal property equivalent in value for rents paid. In the event of forfeiture by Barran and Winton, the rents would also be forfeited. Barran and Winton took immediate possession of the property in 1943. The payments were not made in accordance with the agreement and Barran and Winton had sold the herd of cattle. A new agreement dated April 23, 1946, provided that Barran and Winton would sell the dairy farm, and would pay the proceeds to petitioner, but petitioner was not to receive any sums in excess of the balances due under the two 1943 notes. Tluv, agreement further provided that Barran and Winton execute new notes for the full balance due petitioner, together with a mortgage on the dairy farm and also a milk plant owned by Barran and Winton. The attempted sale was unsuccessful and the new notes and mortgages were executed in May, 1947. The parties intended that the sale of the dairy farm took place in July 1943, and the so called lease was in reality a security device. Alexander W. Smith, Jr., Executor, 20 B. T. A. 27; Truman Bowen, 12 T. C. 446. Apparently both petitioner’s and respondent’s briefs prefer the position that the sale took place in 1943. We agree that it did take place in that year and consequently the incidence of the tax falls within that year. The following issues now remain to be decided: (1) Can the capital gain from this sale now be reported on the installment method, or was the entire gain taxable in 1943? (2) Was there any capital gain on the exchange of 98.72 acres of land in 1943 ? (3) Did petitioner omit 25 per cent of the amount reported as gross income bringing into effect the 5-year statute of limitations ? (4) Should a 5 per cent negligence penalty be applied to 1943 ? (5) When the new notes were issued in 1947, did petitioner realize any taxable income from interest or feed sales, and is a negligence penalty applicable? By holding the dairy farm sale took place in 1943, the issues raised on the supposition that the sale took place in 1947 become moot. Issue 1. The major issue in this proceeding relates to the method of reporting the capital gain from the sale of the dairy farm and cattle thereon for a total consideration of $103,558.46. In 1943 Barran and Winton paid $5,250.03 in cash and promissory notes were executed covering the balance. Respondent contends that the capital gain should be reported in full in 1943, while petitioner contends that it may be reported on the installment basis under section 44 (b), I. R. C. The applicable statute is quoted in the margin.[1] On their 1943 income tax returns the petitioner and his wife did not report in any way the sale of the dairy farm, either the real or personal property, nor make any election of reporting this sale on the installment basis. But the 1943 return reported the cash payments of $5,250.03 made by Barran and Winton as well as another item of $600 for rent as follows: “Rent of Farm Lands $5,850.03.” The respondent contends that a taxpayer, desiring to report income from a sale of real property and a casual sale of personal property, must make an affirmative election in the return filed for the year of the sale. Judicial decisions have generally required taxpayers to make an affirmative election in a timely filed income tax return in order to elect to report a sale of property on the installment method under section 44 (b), I. B. C. Once an election has been made to report a sale as a completed transaction, in a subsequent year the taxpayer could not recompute his tax liability by changing to the installment method. Pacific Nat'l. Co. v. Welch, 304 U. S. 191. Where a taxpayer fails to file timely tax returns, he cannot use the installment method. Cedar Valley Distillery, Inc., 16 T. C. 870, 882; Sarah Briarly, 29 B. T. A. 256, 258-259. Where a taxpayer sells property and receives a promissory note for the full purchase price of the property and no election is made on his return to report the gain resulting from the sale on the installment basis as provided in section 44 of the Code, the taxpayer may not later claim the benefit of the installment basis of reporting income. W. T. Thrift, Sr., 15 T. C. 366. In the Thrift case, we said: * * * Having accepted a demand promissory note from the son for the full purchase price of all 24 lots at the time of the conveyance, the fair market value of the note was includible in the petitioners’ gross income for 1946 unless they made an election and qualified under the installment provisions of section 44. As no election to report the gain on the installment basis was made, and the petitioners have not shown that the fair market value of the note was less than its face value, we are of the opinion that the respondent correctly determined that the gain realized from the sale of all 24 lots was properly includible in petitioners’ income for 1946. Nor may the petitioners now claim that they are entitled to the benefits of section 44. The opinion of this Court in Sarah Briarly, 29 B. T. A. 266, is expressive of the established rule, wherein it states that when benefits are sought by taxpayers, meticulous compliance with all the named conditions of the statute is required, and that in' the case of section 44, timely and affirmative action is required on the part of those seeking the advantages of reporting upon the installment basis. We feel that it is now too late for the petitioners to claim the benefits of section 44. [Citing authorities.] It seems to us that our decision in W. T. Thrift, Sr., swpra, is in point here. In the instant case the sale in question was reported in the timely filed income tax return for 1943 as follows: “Bent of Farm Lands $5,850.03,” with no further explanation or information. From this return, the Commissioner was not apprised of any sale whatsoever nor of an election to use the installment method. As indicated in the return, petitioner apparently received professional assistance in its preparation. Petitioner relies principally on United States v. Eversman,, 133 F. 2d 261. The Court there held that though no special ritual had to be followed to report on the installment basis, the circuit court emphasized the fact that a complete disclosure of all relevant facts was made on that return. In the instant case we have no such complete disclosure. We hold that the petitioner cannot now claim the right to report the capital gain from the sale of the dairy farm and cattle on the installment basis. Issue 2. In 1943, petitioner’s wife Corinne Scales exchanged 98.72 acres of real estate for 67 acres of real estate and the sum of $1,622 in cash. Corinne Scales sold the 67 acres of real estate within a short time after she acquired it for $8,250. Thus, the total consideration she received for the 98.72 acres of real estate in 1943 was $9,872, or $100 per acre. The issue here depends upon Corinne Scales’ basis for determining gain with respect to the 98.72 acre tract. Respondent determined the basis was $8,250, while petitioner contends the basis was $9,872. Corinne Scales inherited the 98.72 acre tract under the will of her grandfather, John C. Haley, who died on June 20,1913. He left the property to Corinne Scales’ mother for life and the remainder to her heirs — only Corinne Scales. The basis for determining gain depends on the value of this property on June 20, 1913. Petitioner testified that in his opinion the fair market value of the land was $80 per acre and the timber and rails $40 per acre on June 20,1913. At the time of the exchange in 1943, there was no longer any timber or cedar rails on the land. They had been sold and removed from the land. The fair market value of the land on June 20, 1913, was not more than .$8,250. The basis of $8,250 determined by respondent is sustained and petitioner realized a long term capital gain of $1,622 in 1943. IssueS. The third issue is whether respondent is barred by limitations from asserting deficiencies and penalties for the year 1943 or whether section 275 (c), I. R. C., is applicable. Section 275 (c) of the Internal Revenue Code provides as follows: * * * If the taxpayer omits from gross income an amount properly includable therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment at any time within 5 years after the return was filed. The respondent has the burden of proving that the 5-year limitations period applies, C. A. Reis, 1 T. C. 9, We have determined from the evidence that the following amounts have been omitted from petitioner’s gross income for 1943: One-half of long-term gain from sale of land-$18,697.00 One-half of long-term gain from sale of personal property-[2]18,611.97 Short-term gain from sale of personal property- 3,318. 46 One-half of long-term gain from exchange of 98.72 acre tract- 811. 00 Other items omitted and conceded by petitioner- 1, 753.94 Total omissions from gross income-$43,192.37 Petitioner contends that the gross income reported on their 1943 return is $170,231.74, while respondent determined $83,260.94. Even under petitioner’s computation, more than 25 per cent of $170,231.74 ($42,557.94) has been omitted and section 275 (c) is applicable. Moreover, even if it would be determined that our findings on any of the smaller issues were not correct, the omission only of the capital gain from the sale of the dairy farm constitutes at least 25 per cent of the gross income reported on the 1943 return. The most important difference between the methods of computation by petitioner and respondent concerns the sale of feed. Petitioner reported gross income of feed sales of $79,229.07, which is the total price without deducting any amount for cost of feed sold. Petitioner listed as an expense deduction on his return “Feed $107,600.05.” Kespondent determined that cost of feed sold is $79,229.07, having shown that the feed was purchased and not raised. In figuring business income involving the sale of goods, it is axiomatic that gross income is gross sales less cost of goods sold. Lela Sullenger, 11 T. C. 1076, Kegulations 111, section 29.22 (a)-5. The feed sold must have cost something. We have found that the feed sold must have cost at least $50,000. The following computation shows petitioner’s gross income for 1943 after an adjustment is made for cost of feed sold: Petitioner’s computation-$170,231. 74 Less allowance for cost of feed sold_ 50,000.00 Total income allegedly reported_ 120,231. 74 25 per cent of total- 30,057. 94 We have determined heretofore that petitioner omitted $43,192.37 gross income from his return for 1943 and have given figures to substantiate this total. Therefore, the 5-year statute of limitations of section 275 (c) is applicable and we hold that respondent is not barred by limitations for the year 1943. Issue 1¡~ Respondent asserted a 5 per cent negligence penalty for the year 1943 under section 293 (a), I. R. C. The major issue in this case deals with the legal interpretation of a series of transactions and several documents pertaining to the sale of a dairy farm. Petitioner reported all the cash received from the sale in 1943 on his return, albeit in a confusing manner and a mistaken conception of his legal ■rights. Confusion and legal mistake under the circumstances here shown do not constitute negligence. No citation of authorities seems necessary for that proposition. The other adjustments are relatively small and minor. Having considered all the facts, we hold that the deficiency for 1943 was not due to negligence and respondent erred in asserting a negligence penalty. Issue 5. There are several issues still remaining for the year 1947: Did petitioner receive income of $4,815.37 from interest and $3,500 from a feed bill by the receipt of a note for $103,000, and was the 1947 deficiency due to negligence giving rise to a 5 per cent penalty under section 293 (a), I. R. C. Though these issues have not been rendered moot by our holdings so far and have not been conceded by respondent, respondent has not argued these questions in his brief. In 1947, Barran and Winton gave a note of $103,000 to petitioner to consolidate all their obligations into one evidence of indebtedness and to extend the maturity date. The new note included accrued interest from prior years and a 1944 note for feed sales. The security of the note was the security originally given for the sale price of the dairy farm. The additional security of a mortgage on a milk plant was substitution collateral for the livestock which had been sold. Petitioner was on the cash basis. There was no determination that the consolidated note given petitioner for the original debts for interest and feed sales was the equivalent of cash or was given or accepted as payment. Mellinger v. United States (Ct. Cl.), 21 F. Supp. 964. We hold, therefore, that petitioner did not receive income in 1947 in the amounts of $3,500 for the feed bill and $4,815.37 for interest. The facts show that they remain yet to be paid. For the year 1947 there has been no showing of any additional income other than that already agreed to by petitioner. Having considered all the facts we hold there is no basis for the assertion of a negligence penalty for 1947 under section 293 (a), I. R. C. Decisions will be entered under Rule SO. SEC. 44. INSTALLMENT BASIS. (b) Sales op Realty and Casual Sales op Personai/ty. — In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price (or, in case the sale or other disposition was in a taxable year beginning prior to January 1,1934, the percentage of the selling price prescribed in the law applicable to such year), the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term “initial payments” means the payments received In cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made. Total sale price personal property_$43, 558. 46 Less : Amount reported_$3, 016. 05 Short term gain_ 3, 318. 46 6, 334. 51 Long term gain of sale of land omitted from gross income_ 37, 223. 95 One-half of long term gain omitted_ 18, 611. 97