OPINION. Black, Judge: The principal issue in these proceedings is whether certain amounts paid during the years 1944 and 1945 by The Read House Company, a Tennessee corporation, on a second mortgage indebtedness payable to the American Trust & Banking Company, Edmond Smartt, and J. D. L. McPheeters, administrators with the will annexed of the estate of Samuel R. Read, deceased, were taxable to petitioner as being essentially the equivalent of dividends constructively received by him. The second issue is whether petitioner omitted on his tax return for the year 1944, 25 per cent of his gross income so as to bring into effect the 5-year period of limitation provided by section 275 (c) of the Code. First Issue. Relying on the authority of section 115 of the Code, the applicable portions being set forth in the margin,[1] respondent determined that petitioner received income in the form of dividends from The Read House Company[2] to the extent of $37,808.85 during 1944 and $41,581.98 during 1945. At the outset it should be remembered that we do not have before us as a petitioner The Read House Company, a Tennessee corporation, and do not have to determine whether the interest it paid in each of the years 1944 and 1945 to the Read estate, the holder of the second mortgage indebtedness, was deductible as interest by the corporation. We pass no judgment as to that because it is not an issue before us. The question which we have to determine is whether the second mortgage indebtedness upon which the payments were made was the indebtedness of petitioner and his two associates, Noe and Florida. If it were, then, of course, when The Read House Company made the payments on the indebtedness they would be payments made on petitioner’s indebtedness and the tax consequences would be as the Commissioner has determined. It requires no citation of authorities that such would be taxable income to petitioner if the payments were made to discharge his indebtedness. We think, however, that it is entirely clear that the indebtedness was not the indebtedness of petitioner and his two associates and never was their indebtedness. The creditor was the Read estate and the debtor was the corporation, and petitioner and his two associates were merely the stockholders of the corporation which owed the debt. Under such state of facts it requires no citation of authorities to establish that payments on the debt did not result in dividends to petitioner. We are entirely convinced-by the evidence before us, through stipulation and through testimony, and by the entire record that the payments in question were not essentially a dividend taxable to petitioner. In the instant case, the petitioner did not at any time purchase or own the stock which was retired. The stock was never transferred to him and he never assumed any personal liability for the mortgage. Neither petitioner nor his two associates signed the notes which were secured by the second mortgage. It is true they put up their 1,290 shares of stock in the corporation as additional security for the second mortgage but that was merely giving the ¡corporation of which they were then the sole stockholders the benefit of the use of their collateral. The mortgage indebtedness was in no sense their indebtedness. It was the corporation’s indebtedness. The corporation purchased the stock directly from the Eead estate. The evidence indicates that petitioner and his associates were interested in buying all the outstanding shares of corporate stock and that they intended to invest not more than $200,000. In order to obtain the $185,000 offered in cash (no other purchasers had been willing to pay as much) the administrators of the Eead estate and their attorneys worked out the arrangement whereby second mortgage notes amounting to $581,990 were accepted from the corporation in exchange for the shares of stock not sold to petitioner and his associates and these shares were immediately retired. Petitioner and Tom Florida both testified that they did not participate in planning this arrangement, and, in fact, all they did was to accept the plan as it was offered to them. As to the first issue we hold for the petitioner. Second Issue. This issue, as we have already stated, involves the statute of limitations. Eespondent concedes that the statute of limitations has run as to the deficiency determined for the year 1944 unless petitioner omitted from his return for that year 25 per centum of his gross income. Eespondent alleges that petitioner did so omit 25 per centum of his gross income for that year and, therefore, the 5-year statute of limitations applies. The applicable statute is printed in the margin.[3] The respondent, in alleging that the statute of limitations had not run as to the year 1944, makes the following affirmative allegations in his answer: 5. The petitioner in his individual income tax return for the calendar year 1944, filed with the Collector of Internal Revenue for the District of Tennessee, reported total gross income in the sum of $36,197.71, and a net loss in the sum of $122.84. 6. Petitioner’s correct total gross income for the taxable year 1944 is in the sum of $87,577.25. 7. The sum of $51,369.54, omitted from gross income and properly includible therein, is in excess of 25 per cent of the amount of gross income reported in the said return. 8. Under the provisions of Section 275 (c) of the Internal Revenue Code, the tax for the year 1944 may be assessed, or a proceeding in Court for the collection of such tax may be begun without assessment at any time within five years after the return was filed. As we have noted in our Findings of Fact, respondent has computed that petitioner reported gross income on his return for 1944 of $36,197.71. This $36,197.71 was composed of $18,127.46 gross income from petitioner’s business of Edenfield Electric Co. and $18,070.25 from other sources. We have found as a fact that petitioner reported as gross income for 1944, $36,197.71. Petitioner claims $758,004.18 gross income was reported from his business of Edenfield Electric Co. Of course, if he is correct as to that, then clearly section 275 (c) does not have any application. But it seems to Us that petitioner confuses gross receipts with gross income and obviously the two are not the same. The expenses in question constitute a part of the cost of operations of the Edenfield Electric Co. and, as such, these expenses are to be deducted from gross receipts in arriving at gross income. The Internal Revenue Code authorizes no deduction for cost of goods sold or cost of operation but such costs must be deducted in arriving at gross income. Cf. Lela Sullenger, 11 T. C. 1076; Joe W. Scales, 18 T. C. 1263. When this fact is kept in mind, we fail to see where the Commissioner is in error when he alleges that the total gross income reported by petitioner on his return for 1944 was $36,197.71; one-fourth of this amount is $9,049.43. Tlie Commissioner in his determination of the deficiency has determined that the petitioner oriiitted from his return the following items of income: (a) Additional income-$37, 808. 85 (b) Pro rata profit on jobs- 13, 560. 69 Total gross income omitted_$51,369. 54 We have held against the Commissioner as to item (a), $37,808.85, in our decision of Issue 1. Therefore, petitioner omitted nó sUch amount from his gross income. Petitioner assigned no error as to item (b), $13,560.69. Therefore, that adjustment stands as the Commissioner has made it. It follows that petitioner has omitted from his gross income for 1944, $13,560.69. This is in excess of 25 per centum of the gross income reported on his return for 1944 and the 5-year statute of limitations provided by section 275 (c) is applicable. Assessment of tbe deficiency determined by respondent for the year 1944 is not barred by the statute of limitations. On this second issue the Commissioner is sustained. Decisions will he entered under Bule SO. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. (a) Definition of Dividend. — The term “dividend” when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * * »***••* (g) Redemption of Stock.— (1) In general. — If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. The Read House Company is hereinafter sometimes referred to as the company, and at other times as the corporation. SEC. 275. PERIOD OF LIMITATION ÜPON ASSESSMENT AND COLLECTION. Except as provided in section 276— ******* (c) Omission feom Geoss Income. — If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may he assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5- years after the return was filed.