**WASHINGTON FARMS, Inc.**
v.
**UNITED STATES.**
Civ. No. 998.

United States District Court
M. D. Georgia, Macon Division.
June 9, 1954.

W. H. Harris, Fort Valley, Ga., C. Baxter Jones, of Jones, Sparks, Benton & Cork, Macon, Ga., for plaintiff.

Frank O. Evans, U. S. Atty., Macon, Ga., Jack J. Gautier, Asst. U. S. Atty., Macon, Ga., for defendant.

DAVIS, Chief Judge.

Judgment was entered for plaintiff on motion for summary judgment on November 10, 1953, D.C., 116 F.Supp. 142, and on November 20 defendant filed with the clerk a motion denominated "Motion to Set Aside Judgment", wherein it was prayed "that the findings of fact and conclusions of law heretofore found by the court and the summary judgment heretofore rendered against it be set aside and that this case be set down for trial on the merits". The only ground of the motion was the general ground that the court erred in granting a summary judgment for plaintiff because the pleadings and admissions of record showed that there were issues of fact to be tried.

This motion presents no question which had not been previously considered and decided by the court.

Plaintiff corporation was alleged and admitted to be a farmer engaged only in farming during the whole of the year 1942. Its tax returns for that year were filed and its tax liabilities according to the returns were paid on or before March 15, 1943.

On January 19, 1948, the Commissioner mailed to plaintiff by registered mail his 90-day notice determining tax deficiencies against plaintiff for the year 1942. It is apparent that the notice was mailed more than three years after the filing of the return, but within five years, the Commissioner contending that gross income properly includible was omitted from the return in excess of 25% of the amount stated, and that under Section 275(c) of the Code, 26 U.S.C.A., the statutory period of limitation upon assessment and collection had not expired. Plaintiff made payment of the asserted deficiency, duly filed its claim for refund, and thereafter its complaint in this court for the recovery of the overpayment, on the grounds that the deficiencies were erroneously determined, that they were arbitrary and excessive in amount, and expressly that the determination and assessment of any tax liability against plaintiff for the year 1942 was barred when made.

On motion for summary judgment the only question presented and discussed, or considered, was whether there was omitted from the returns gross income properly includible therein in excess of 25% of the amount stated, so as to permit the determination and assessment of deficiencies under Section 275(c) rather than 275(a), as modified by Section 277.

In respect to that question there was no issue as to any material fact. Plaintiff, a farmer, reporting on a receipts and disbursements basis, reported the

amount of $119,172.63 received during the taxable year from the sale of produce raised during the taxable year or prior years, reporting and deducting cost of operations in the amount of $94,259.94, and showing an excess of receipts over cost of operations in the amount of $24,-912.69. The Commissioner accepted the amount of receipts reported as correct, but determined on an accrual basis that $2,326.25 received in 1943 was taxable for 1942, and, also on an accrual basis, that a constructed closing inventory of peanuts and cotton in the amount of $6,-431.36 should be added to income.[1] These two items of additional income total $8,757.61, which is much less than 25% of $119,172.63, though it exceeds 25% of $24,912.69. The question is what was the amount of plaintiff's stated gross income within the meaning of Section 275(c) of the Code?

The gross income of a farmer reporting on the basis of receipts and disbursements is defined as including (1) the amount received during the taxable year from the sale of livestock and produce which were raised during the taxable year or prior years, (2) the profits from the sale of any livestock or other items which were purchased, and (3) gross income from all other sources. In the case of a farmer reporting on the accrual basis, adjustments are made for opening and closing inventories. Regulation 111, Sec. 29.22(a)–7. On either basis amounts expended in carrying on the business of farming are allowed as a deduction from "gross income". Regulation 111, Sec. 29.23(a)–11.

Defendant contends that Code Section 275(c) applies, as modified by Section 277, but there is some doubt how seriously the contention is made. In a memorandum brief in opposition to the motion for summary judgment the argument was limited to a bare statement of the contention, citing no authority ex-cept the applicable sections of the Code. In the motion to set the judgment aside, after judgment was rendered, defendant refers to Section 29.22(a)–7 of the Regulations, on which plaintiff relies, Section 29.22(a)–5, which defines gross income from business "in the case of a manufacturing, merchandising or mining business" as meaning total sales less the cost of goods sold, and to Section 29.501–2, relating to the gross income requirement in the definition of personal holding companies, to the effect that the determination of gross income "must not be made upon the basis of gross receipts, since gross income is not synonymous with gross receipts".

As supporting authority defendant relies solely on Woodside Acres, Inc., v. Commissioner, 2 Cir., 134 F.2d 793, and Garrett Holding Corp., 9 T.C. 1029, both involving the gross income requirement in the definition of personal holding companies and holding that for the purposes of that definition gross income of a farm which is a part of the personal holding company income is determined by deducting the cost of production from the gross sales. Both courts took great care to say that the gross income of a farmer was not involved, nor the regulations which apply to farmers, and to say, at least by implication, that a farmer's gross income under the Regulations is the amount of gross receipts before subtracting those expenses which are expressly allowed to be deducted from what is called "gross income". Thus, both of these cases, at least by their dicta, support plaintiff rather than defendant.

The precise question arose and was decided in plaintiff's favor in Mc-Culley v. Kelm, D. C. Minn. 1953, 112 F. Supp. 832. The Woodside and Garrett cases were examined for their true holdings, and in a clear and convincing opinion it was held that in determining the gross income of a farmer, cost of opera-

1. It is urged by Plaintiff that these and certain other adjustments were arbitrary and unreasonable, and if an accrual basis is used that the added income would be offset by corresponding 1941 accruals, including an opening inventory, which were disregarded by the Commissioner. It is not necessary in deciding the statute of limitations question to consider that contention.

tions should not be deducted from the gross receipts of the farm. That is the opinion and holding of this court.

█ What has been said is sufficient to dispose of the "Motion to set aside judgment" as originally filed, but a further question is now presented by a pleading which defendant filed with the Clerk on February 12, 1954, denominated "Amended Motion to Set Aside Judgment". Defendant therein states that at the time of filing its answer and its brief in opposition to the motion for summary judgment, "through inadvertence and excusable neglect" defendant failed to call to the Court's attention certain facts therein set forth. This pleading is not allowed as an amendment to the original motion but is considered as an original motion for relief from judgment under Rule 60(b), 28 U.S.C.A.

Beyond the recital as a conclusion that defendant's "failure" was through inadvertence and excusable neglect, no facts are brought to the attention of the Court explaining such failure or supporting the conclusion. In substance, the additional facts for the first time brought to the attention of the Court consist of a recital that plaintiff corporation was liquidated on or about December 31, 1942, that its net assets were distributed to its stockholders in proportion to their respective holdings, that the stockholders were timely assessed as transferees of plaintiff corporation, and that the transferee assessments were successfully defended in the Tax Court on the ground that at the time of the trial in the Tax Court the tax had been paid by the corporation.

█ It is further stated, without explanation, that the attorneys representing defendant did not have information relating to the Tax Court decision, J. P. Quirk, 15 T.C. 709, at the time the answer was filed or at the time the brief in opposition to the motion for a summary judgment was filed. It is not stated when or how the information was obtained, whether before or after judgment was entered, or the motion to set aside the judgment was filed. A portion of the opinion of the Tax Court is quoted, including a reference to Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, from which it is inferred that defendant now has in mind a defense of an equitable nature analogous to that upheld in Stone v. White. There was no offer to plead any additional defense, and none has yet been plead. Judged by any reasonable test, defendant has not presented a case for relief from judgment under Rule 60(b).

In opposition to the amended motion, plaintiff has filed with the Court a printed copy of the transcript of record of the Tax Court filed in the U. S. Court of Appeals for the Fifth Circuit, in the case of Commissioner of Internal Revenue v. Estate of Wright, 196 F.2d 1022, so that the Court now has from plaintiff the complete Tax Court record in the case referred to in the amended motion, including the petition to review the judgment of that court.

The attorneys representing the Commissioner in the Tax Court were, of course, informed of all of the facts of that case, and the petition for review which was filed in the Court of Appeals on September 11, 1951, more than a year before the present suit was filed, was signed, and the Commissioner was represented in that Court, both by the Assistant Attorney-General and by the Chief Counsel of the Bureau.

The claim for refund upon which the present suit is based and the complaint itself put defendant and its attorneys handling the case on notice of all the facts on which plaintiff would rely, specifically including the bar of the statute of limitations, and even including notice of the Tax Court case itself, in that the exhibits attached to the complaint were in part photostatic copies bearing the filing stamp of the Tax Court in that case. The complaint in this case was served on November 3, 1952. At defendant's request, to allow time for the "Department of Justice to get the necessary data and

information from the Bureau of Internal Revenue in order to prepare an answer", the time for serving the answer was twice extended beyond the 60 days allowed by the Rules to a total of approximately six months, the answer being filed and served on May 4, 1953. The motion for summary judgment was filed shortly thereafter on May 25, 1953 and judgment was entered on November 10, 1953. During all that time the facts of the Tax Court case were known to defendant, and within the Department of Justice itself, and should have been readily available to the special attorney to whom the handling of the case for defendant was assigned.

■ The Court does not question that information of the Tax Court case was not specifically brought to the attention of the special attorney, but it was the duty and responsibility of defendant to inform its counsel. It was not plaintiff's duty, and any suggestion that plaintiff should have informed either the defendant or the court is entirely without merit. The Court has taken into consideration that defendant is the United States, necessarily handling its court litigation through various attorneys, and that proceedings before the Tax Court are represented by Bureau counsel, whereas proceedings in this court are handled by the Department of Justice. It so happens that the Tax Court case referred to was represented on appeal by both. In view of all of the facts now disclosed, it cannot be said that all of the attorneys who at one time or another represented defendant in this particular case in this court have made a showing of excusable neglect on their part, and the Court cannot so hold. Certainly defendant as a litigant has not made such a showing.

Aside from any question of procedure, and assuming inadvertence and excusable neglect, the Court is not impressed that a meritorious defense exists under Stone v. White, supra, or that substantial justice would be done after judgment in plaintiff's favor by setting aside the judgment and reopening the case.

■ Dealing with the effect of a judgment in a judicial proceeding to which the Government is a party, and the review of such judgment, or relief from such judgment, there is no reason or authority for treating the Government different from any other litigant. The Rules of Civil Procedure, with certain stated exceptions, apply to all civil actions in the District Courts, including those to which the Government is a party. Certain concessions are made in favor of the Government, such as the time within which an answer must be served, enlarged in this particular case to a total period of six months, but subject to such stated exceptions the Government as a litigant is bound by the rules equally with any other litigant. See Brent v. Bank of Washington, 10 Pet. 596, 9 L. Ed. 547; U. S. v. Nourse, 6 Pet. 470, 8 L.Ed. 467.

To now examine plaintiff's tax liability for the year 1942 in detail would involve transactions approximately 12 years old. Important, if not essential, witnesses are shown to have departed this life. The delay in trying these issues is chargeable in large measure to defendant. All admitted tax liability has long since been paid, and no admitted liability is included or was sought to be included in plaintiff's refund claim or in its suit. The present suit was filed more than eighteen months ago, and if defendant had timely asserted the defenses suggested by the amended motion, the issues would have been tried and disposed of some time ago. Under all the circumstances it seems inequitable to plaintiff to now set aside the judgment in its favor, and to reopen the case for the determination of defenses which were not made by defendant and were not before the Court when the judgment was entered. There should be an end to litigation some time, even when the Government is a litigant.

Stone v. White involved the income of a fiduciary which was assessed against and paid by the fiduciary rather than the beneficiary to whom it was distributed. The question was whether the in-

come was taxable to the fiduciary or to the beneficiary, in either event the beneficiary bearing the burden of the tax. There was a complete identity of interest, and since the determination and assessment of the tax against the beneficiary was barred by the statute of limitations, it was held by the court that it would unjustly enrich the beneficiary by whom the tax should have been paid to permit a recovery by the fiduciary which would be entirely for the benefit of the beneficiary.

In the present case the income involved and the liability involved are that of plaintiff corporation. The time within which the tax could be determined and assessed against plaintiff had expired before any proceeding was commenced against its stockholder transferees, and the liability of plaintiff corporation was barred except for the additional year for proceedings against its transferee stockholders. Plaintiff's returns for 1942 were duly filed on or before March 15, 1943. Deficiency notices were mailed to the principal stockholder transferees more than three years thereafter, on June 9, 1947, and October 31, 1947, respectively, beyond the time within which a determination or assessment could have been made against the corporation, and it is difficult to see how anything that happened thereafter could restore the right of the Commissioner to determine or assess or collect a deficiency against the corporation. Nor in the absence of further voluntary action by the Commissioner would it have been possible for plaintiff to pay the deficiency tax for 1942 and thereafter file a refund claim. That was made possible, and in fact necessary, by the Commissioner's decision, wholly on his own responsibility, to issue the 90-day letter to plaintiff on January 19, 1948, erroneously relying on Section 275(c) of the Code. That imposed upon plaintiff the necessity of electing whether to petition for review in the Tax Court or to pay the tax. At that time the transferee stockholders had filed their petitions in the Tax Court, and except for the Commissioner's decision to require payment by plaintiff, the issue of liability would presumably have been determined in the Tax Court in the transferee cases and the controversy would have been disposed of long ago. If it is now impossible to try the issue of plaintiff's liability, it is the result of the Commissioner's own action.

The transferee liability of a stockholder of a corporation is not comparable to that of a beneficiary of a trust. Where it exists, the Commissioner may proceed at his election against any one stockholder or any number to the extent of the assets transferred. It is a secondary liability under specified conditions to pay the tax owed by the corporation. If the liability of the corporation becomes barred before any proceeding is commenced against the transferee, and if the Commissioner makes the mistake of requiring the corporation to pay the tax after it is barred, and thereby defeats his claim against the transferee, it would be a strange rule of equity which would entitle him under any circumstances to retain against the corporation the amount thus illegally collected.

It is somewhat vaguely stated in the amended motion that the identical stockholders involved in the Tax Court case would be the beneficiaries of the recovery by plaintiff, but that is not supported by the Tax Court record and is denied by plaintiff. There were in fact other stockholders, and the corporation has creditors who were entitled to be paid. Certainly there is absent the complete identity of interest which existed in Stone v. White, and even if any stockholder is enriched by the recovery, it is not unjust enrichment as to defendant unless defendant is justly and equitably entitled to retain as against both plaintiff and the stockholders the contested amount of tax determined to be owed by plaintiff and illegally collected from plaintiff.

It is the opinion of the Court that both the original motion and the amended

motion should be denied, and judgment will be entered accordingly.

Wherefore, it is considered and decreed that defendant's motion and amended motion to set aside the final judgment in plaintiff's favor be, and they are, Denied.