Laguna Royalty Company (successor by merger to Lydia Oil Company) v. Commissioner.
Laguna Royalty Co. v. Commissioner
Docket No. 2697-65.
United States Tax Court
T.C. Memo 1968-36; 1968 Tax Ct. Memo LEXIS 262; 27 T.C.M. (CCH) 164; T.C.M. (RIA) 68036; 28 Oil & Gas Rep. 291; February 28, 1968. Filed *262 Held: (1) In the case of oil and gas producing properties, "lifting costs," which are a portion of the cost of producing oil and gas, are to be subtracted from gross sales in computing gross income for the purpose of determining whether personal holding company income, as defined in section 543 of the Internal Revenue Code of 1954, is at least 80 percent of the corporation's total gross income; (2) On the facts presented herein, respondent correctly determined that Lydia Oil Company, of which petitioner is the successor by merger, was a personal holding company during the years 1962 and 1963. B. S. Mothershead, Clarke and Courts Bldg., Harlingen, Tex., for the Petitioner. Ralph V. Bradbury, Jr., and Stephen S. Merritt, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Petitioner is a successor by merger in 1964 to Lydia Oil Company. Respondent determined deficiencies in income tax of Lydia Oil Company for the calendar years 1962 and 1963 in the respective amounts of $3,438.41 and $1,142.41, notice of which was mailed to petitioner on April 8, 1965. The entire amounts of the asserted deficiencies are in controversy. In addition, petitioner claims a refund for the year 1962 by reason of an unused investment credit for the year 1963. Respondent's concession with respect to this claim will be given effect under Rule 50. The deficiencies in question resulted from respondent's determination that "Lydia Oil Company *265 was, during the years 1962 and 1963, a personal holding company subject 165 to tax under section 541 of the Internal Revenue Code of 1954," and that its income tax liability "is increased by application of the personal holding company tax." The issue presented is whether, in the case of oil and gas producing properties, "lifting costs," which constitute a portion of the cost of producing oil and gas, are to be subtracted from gross sales in computing gross income for the purpose of determining whether personal holding company income, as defined in section 543 of the Internal Revenue Code of 1954, is at least 80 percent of the corporation's total gross income for each of the taxable years. Findings of Fact The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Petitioner is a corporation organized under the laws of the state of Texas, having its principal office and place of business in Harlingen, Texas. It is the successor by merger completed on April 1, 1964, to Lydia Oil Company, herein referred to as Lydia, a Texas corporation having the same office and place of business, and with respect *266 to which the deficiencies were determined. Lydia filed timely corporation income tax returns for the calendar years 1962 and 1963 with the district director of internal revenue at Austin, Texas. All of the issued and outstanding stock of Lydia in the years 1962 and 1963 was owned directly or indirectly by or for not more than five individuals. As of April 15, 1961, Lydia acquired certain producing oil and gas properties situated in Nolan County, Texas, from Laguna Royalty Company, identified as the Lake Trammell property, the W. C. Bohannon property, and the Susie Featherstone property. The income tax returns filed by Lydia for 1962 and 1963 contained schedules of the gross sales of oil and gas, gross production taxes, depletion, depreciation and other lease operating costs related to these three properties. In 1962, after paying royalties, and after paying production taxes of $76.95 on its share of the gross operating income from these oil and gas properties, Lydia received $1,462.77 from sales of oil and gas from the properties. It expended $543.65 as its share of the other lease operating costs and $76.95 as its share of the gross production taxes. It received $5,202.08 *267 as dividends. No other items are includable in gross income for 1962. In 1963, after paying royalties, Lydia received as its share of the oil and gas sales from these properties $1,494.23, out of which it paid $100.79 as its share of the gross production taxes and $630.03 as its share of the other lease operating costs. It received $5,481.77 as dividends, $4.35 as interest and $162.83 as long-term capital gain from the sale of corporate stock. No other items are includable in gross income for 1963. The totals shown above as "other lease operating costs" included all direct costs, other than gross production taxes, depreciation and depletion, related to the three properties, such as cost of producing the oil and gas, both for the benefit of the owners of working interests and of royalty interests, separating salt water therefrom, storing the oil, marketing the production and cost of secondary recovery operations. These classes of expenses were not segregated or kept separately on the books of the company. It is agreed for the purposes of this proceeding that in excess of 50 percent of the "other lease operating costs" are direct production costs. In the calendar year 1963, Lydia *268 acquired section 38 assets having a life of over 8 years at a cost of $2,528.53, the full amount being a qualified investment in which, respondent concedes, a tentative investment credit of $177 is allowable against income taxes paid or payable for 1963 and 1962 in that order. A claim for refund, Form 843, of income tax in the amount of $108.02 for the taxable year 1962 was filed on March 16, 1964, by reason of a claimed unused investment credit in the taxable year 1963. Opinion Respondent determined that Lydia Oil Company, of which petitioner is the successor, was in 1962 and 1963 a personal holding company subject to tax under section 541, Internal Revenue Code of 1954. This section imposes a personal holding company tax on the undistributed personal holding company income of every personal holding company. Section 542 [1] defines a personal holding company as any 166 corporation (with certain exceptions not applicable here) if at least 80 percent of its "gross income" for the taxable year is personal holding company income as defined in section 543, and if more than 50 percent in value of its outstanding stock is owned directly or indirectly by or for *269 not more than 5 individuals. The parties have stipulated that all of the outstanding stock of Lydia in the years involved was owned "directly or indirectly" by or for not more than 5 individuals. They have also stipulated that Lydia received personal holding company income, as defined by section 543, consisting of dividends, interest and capital gains, in the amount of $5,202.08 in 1962 and $5,648.95 in 1963. Thus there is left for determination the *270 amount of "gross income" received by Lydia in each of the taxable years, in order to determine whether personal holding company income was more or less than 80 percent of the amount of" gross income," and consequently whether Lydia was a personal holding company in either of said years. Other than the personal holding company income, which has been stipulated, the only other item of income received by Lydia during the taxable years which is includable in gross income was the income it received from the operation of the oil and gas properties. With respect to such income, the parties have stipulated: (1) that, in 1962, after paying royalties in an undesignated amount and production taxes in the amount of $76.95, Lydia received $1,462.77 from the sales of oil and gas from the properties, and that it expended $543.65 as its share of "other lease operating costs"; and (2) that, in 1963, after paying royalties in an undesignated amount, it received $1,494.23 from the sales of oil and gas from the properties, out of which it expended $100.79 for gross production taxes and $630.03 as its share of "other lease operating costs." The parties have narrowed the issue presented herein to the *271 question, whether "gross income" as used in section 542, means the entire amount (less royalties) for which the taxpayer sells the oil and gas produced by it in the immediate vicinity of the wells, or that amount reduced by direct production or "lifting costs," a term used in the oil and gas producing industry for operating or production costs, consisting of those deductible costs incurred in the production of oil and gas after completion of drilling and before the sale, refinement or transportation of the oil or gas. Respondent concedes that if the term "gross income" as used in section 542 when referring to gross income from oil and gas wells, means the amount for which the taxpayer sells the oil and gas produced by it in the immediate vicinity of the wells, then Lydia was not a "personal holding company" in 1962 or 1963 because less than 80 percent of its gross income was personal holding company income. On the other hand, petitioner concedes that if the term "gross income" as used in section 542, when referring to gross income from oil and gas wells, means the amount for which the taxpayer sells the oil and gas produced by it in the immediate vicinity of the wells, reduced by direct *272 production or "lifting costs," then it was a personal holding company in 1962 and 1963. Petitioner's position is that the term "gross income" as used in section 542(a)(1), when referring to oil and gas producing properties, is the amount for which the taxpayer sells the oil and gas in the immediate vicinity of the wells, without deduction for costs or expenses other than rents and royalties. Respondent's position is that the term "gross income," as used in section 542, when referring to oil and gas properties for personal holding company computation purposes, means the gross sales - the amount for which the oil and gas is sold in the immediate vicinity of the wells, less "lifting costs." In support of its position, petitioner argues that the concept of the term "gross income" as used in section 542(a)(1) is no different than that of the term "gross income from the property" as used in section 613 [2] and refers to section 1.613-3(a) of the Income Tax Regulations which provides: "In the case of oil and gas wells, 'gross income from the property,' as used in section 167 613(c)(1), means the amount for which the taxpayer sells the oil or gas in the immediate *273 vicinity of the well." Since oil and gas wells are specifically excluded from the definition of "gross income from the property" contained in section 613(c)(1), section 1.613-3(a) of the *274 Regulations must be considered in the light of section 611 and 613 dealing with percentage depletion. Thus, the difficulty with petitioner's contention lies in the fact that section 613 relates to allowances for percentage depletion, the purpose of which is to compensate the owner of natural resources for the part exhausted in production, Paragon Jewel Coal Company v. Commissioner, 380 U.S. 624, whereas section 542 relates to the determination of gross income derived from business - in this case the operation of the oil and gas wells, for the purposes of the personal holding company tax. Both sections are part of the subtitle referred to in section 61, [3] but are to be interpreted in the light of the respective purposes for which they are intended. Cf. Woodside Acres, Inc. v. Commissioner, 134 F. 2d 793, 795 (C.A. 2, 1943), affirming 46 B.T.A. 1124. The term "gross *275 income from the property," as used in section 613 for the purposes of measuring the depletion or exhaustion of the natural resource, is not the same as "gross income" as used in section 542 (a)(1) for the purpose of determining personal holding company tax liability. The cases cited by petitioner, Helvering v. Mountain Producers Corporation, 303 U.S. 376 (1938); Hugoton Production Company v. United States, 315 F. 2d 868 (Ct. Cl., 1963); Crews v. Commissioner, 89 F. 2d 412 (C.A. 10, 1937); Darby-Lynde Co. v. Alexander, 51 F. 2d 56 (C.A. 10, 1931), certiorari denied 284 U.S. 666, involve the determination of "gross income from the property" for percentage depletion purposes and, for the reasons indicated above, are not applicable herein. We agree with respondent that, in the instant case, the term "gross income" means the gross sales in the amount for which the oil and gas was sold in the immediate vicinity of the wells, less "lifting costs." His position, as set forth in Rev. Rul. 60-344, C.B. 1960-2, p. 186 is that: In the case of oil and gas producing properties, "lifting costs" constitute a portion *276 of the cost of producing the oil and gas and must be subtracted from gross sales in computing gross income for the purpose of determining whether personal holding company income, as defined in section 543 of the Internal Revenue Code of 1954, is at least 80 percent of the corporation's total gross income for a taxable year. In our opinion this is a correct statement of the rule applicable herein. Section 61 provides, in pertinent part, that gross income includes "gross income derived from business," and section 1.61-3 of the Regulations defines gross income in the case of a manufacturing, merchandising or mining business as total sales, less the cost of goods sold. Section 1-542-2 of the Regulations refers to section 61 and the regulations thereunder for the definition of "gross income" and states: "Under such provisions gross income is not necessarily synonymous with gross receipts." The proposition that "gross income" is not synonymous with "gross receipts" is one of long standing. See Regulations 118, section 39.501-2(b); Doyle v. Mitchell Brothers Co., 247 U.S. 179 (1918); Hays v. Gauley Mt. Coal Co., 247 U.S. 189 (1918); *277 Southern Pacific Co. v. Lowe, 247 U.S. 330 (1918), in which the Supreme Court rejected "the broad contention submitted in behalf of the Government that all receipts - everything that comes in - are income within the proper definition of the term 'gross income'." In Woodside Acres, Inc. v. Commissioner, supra, the taxpayer had certain personal holding company income and also gross receipts from the operation of a dairy farm. 168 In order to determine whether its personal holding company income was more or less than 80 percent of its total gross income, it was necessary to determine its gross income from the operation of the dairy farm. The Board of Tax Appeals (now Tax Court) held that the costs of feed and dairy labor were included in the cost of production and, for the purposes of the personal holding company statute, were to be deducted from gross sales. When so deducted the gross income from the operation of the dairy farm was less than 20 percent of the taxpayer's total gross income and it was held to be taxable as a personal holding company. In affirming, the United States Court of Appeals reviewed at length the statutes and regulations relating *278 to the reporting of income by farmers for income tax purposes and stated: Farmers might still compute their net taxable income as the regulations did, and had, provided. Yet gross income so determined for that purpose did not become an immutable factor in determining whether a corporation which ran a farm was also a personal holding company. Congress made no mention of any regulations. We are unwilling, therefore, to impute to it an intent to adopt apparently inapplicable regulations which define gross income for one purpose to provide the definition of gross income for the entirely new and different purpose of the personal holding company taxing statute. It follows then as a matter of course that this taxpayer was permitted to report as a part of its gross income in its return no more of its gross receipts than it could have so reported had it been engaged in some business other than farming. Gross receipts are not always gross income. Southern Pac. Co. v. Lowe, 247 U.S. 330, 38 S. Ct. 540, 62 L. Ed. 1142. * * * See also Garrett Holding Corporation, 9 T.C. 1029 (1947) wherein this Court followed Woodside Acres, Inc., supra; and compare Ray Edenfield, 19 T.C. 13 (1952) *279 which held that the cost of operations of an electric company were to be deducted from gross receipts in arriving at gross income for the purpose of determining limitations under section 275(c) of the Internal Revenue Code of 1939. We hold, on the facts presented, that respondent correctly determined that Lydia Oil Company, of which petitioner is the successor by merger, was a personal holding company during the years 1962 and 1963. Decision will be entered under Rule 50. Footnotes
1. All Code references herein, unless otherwise indicated are to the Internal Revenue Code of 1954, as effective in 1962 and 1963. SEC. 542. DEFINITION OF PERSONAL HOLDING COMPANY. (a) General Rule. - For purposes of this subtitle, the term "personal holding company" means any corporation (other than a corporation described in subsection (c)) if - (1) Gross Income Requirement. - At least 80 percent of its gross income for the taxable year is personal holding company income as defined in section 543, and (2) Stock Ownership Requirement. - At any time during the last half of the taxable year more than 50 percent in value of its outstanding stock is owned, directly or indirectly, by or for not more than 5 individuals. * * *↩
2. SEC. 613. PERCENTAGE DEPLETION. (a) General Rule. - In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under 611 shall be the percentage, specified in subsection (b), of the gross income from the property excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 percent of the taxpayer's taxable income from the property (computed without allowance for depletion). * * * (b) Percentage Depletion Rates. - The mines, wells, and other natural deposits, and the percentages, referred to in subsection (a) are as follows: (1) 27 1/2 percent - oil and gas wells. * * * (c) Definition of Gross Income From Property. - For purposes of this section - (1) Gross Income From The Property. - The term "gross income from the property" means, in the case of a property other than an oil or gas well, the gross income from mining.↩
3. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * * (2) Gross income derived from business; * * *↩